# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABOR ONE, INC., an Illinois Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> STAFF MANAGEMENT SOLUTIONS, LLC, ) <br> an Illinois Limited Liability Company, ) <br> ARAMARK SERVICES, INC., a Delaware ) <br> Corporation, and ARAMARK FOOD AND ) <br> SUPPORT SERVICES, INC., a Delaware ) <br> Corporation, ) <br> ) <br> Defendants. ) | No. 17 C 7580 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM ORDER

Until May 2017, Plaintiff Labor One, Inc., was a subcontractor for Defendant Staff Management Solutions, Inc., providing temporary laborers to Staff Management's clients, including Defendant Aramark Services, Inc. When Staff Management terminated the agreement in a billing dispute, Plaintiff filed this lawsuit, alleging breach of contract and other claims. Defendants have moved to dismiss. As explained below, Plaintiff's allegations are insufficient to state claims arising under federal law, and there is no other basis for federal jurisdiction. Accordingly, the complaint [1] is dismissed without prejudice.

## BACKGROUND

Plaintiff Labor One, Inc., and Defendant Staff Management Solutions, LLC, were parties to a contract under which Labor One provided temporary laborers to Staff Management Solutions' clients, including Defendant Aramark Services, Inc. (Complaint [1], ¶¶ 13-16.) Pursuant to the agreement, from 2015 through 2017, Labor One provided workers to perform services for Aramark, for which Labor One billed Staff Management. (*Id.* ¶¶ 19-21.) A dispute arose when Labor One "encountered technical issues" entering time records into Staff Management's software, and Staff Management allegedly refused to pay for some of the labor services that Labor One had provided. (*Id.* ¶¶ 23-25.) Even after Labor One produced an audit report showing that

Staff Management owed it more than $250,000, Staff Management refused to pay. (*Id.* ¶¶ 26-29.) Labor One contends that Defendant Aramark itself owes Labor One nearly $50,000 for services Labor One rendered as well. (*Id.* ¶ 30.) Plaintiff believes these circumstances support a variety of claims. In this lawsuit, filed in October 2017, Labor One charges Staff Management with breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); intentional and negligent interference with prospective economic relations (Counts III and IV); and violations of the federal antitrust laws (Count VI), the Illinois Unfair Competition Law (Count VII); the Illinois Deceptive Trade Practices Act (Count VIII); the Illinois common law of "commercial disparagement" (Count IX); and the Civil Rights Act, 42 U.S.C. § 1981 (Count X). Labor One alleges a claim of unjust enrichment against both Defendants (Count V).

Defendants have moved to dismiss all claims other than the claim for breach of contract. The parties are not diverse in citizenship: Labor One is organized under Illinois law and has its principal places of business here. (Complaint ¶ 10.) Plaintiff alleges that Staff Management Solutions is a "limited liability company duly authorized and existing under the laws of the State of Illinois." (*Id.* ¶ 11.) Plaintiff has not identified the members of the LLC, as required for diversity jurisdiction, but the court presumes that at least one of them is an Illinois citizen. Because a federal question is the basis for the court's jurisdiction, the court addresses the federal claims first.

## **DISCUSSION**

Of the ten counts in the complaint, only two invoke federal law: Count VI alleges a claim arising under the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, and Count X alleges a violation of the Civil Rights Act, 42 U.S.C. § 1981. To survive Defendant's motion to dismiss these counts, Labor One's complaint must include enough factual detail to give the defendant fair notice of the claims and grounds upon which they rest, and the allegations must add up to a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (civil rights complaint was inadequate because it lacked plausible allegation that defendant acted "for the purpose of

2

discriminating"); *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57, 566–67 (2007) (conclusory allegations of antitrust violation are insufficient, as the alleged conspiracy was equally likely to have resulted from lawful goals). To state a plausible claim, a plaintiff must allege enough factual matter, taken as true, to "raise a right to relief above the speculative level" and "nudge[ ] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. In determining whether this test is met, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff, but does not accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679. Formulaic recitation of the elements of a cause of action supported by conclusory statements are not enough. *Id.* at 678 (citing *Twombly*, 550 U.S at 555); *see also Tamburo v. Dworkin*, 601 F.3d 693, 699 (7th Cir. 2010) (affirming the dismissal of antitrust claims that were "pleaded in a wholly conclusory fashion" so as to "sweep in the entire gamut of federal antitrust violations"); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (antitrust allegations usually "will require more detail, both to give the opposing party notice of what the case is all about and to show how . . . the dots should be connected.").

As explained here, Plaintiff's allegations of federal law claims are insufficient under these standards.

**I.     Sherman Act**

Plaintiff asserts in Count VI that Staff Management's conduct "has the effect of restraining interstate commerce and constitutes an unreasonable agreement in restraint of trade and an attempted monopolization in violation of Section 2 of the Sherman Act." (Complaint ¶ 80.) Plaintiff offers no factual specifics in support of this claim apart from the vague assertion that Staff Management has "undermined Plaintiff's capability" to provide workers to Aramark "by making false allegations of material fact and without due cause." (*Id.* ¶ 82.) The complaint offers no other information about the nature of the "false allegations," to whom or when they were made, or how they undermined Plaintiff's ability to work for Aramark. Instead, without offering factual specifics, Plaintiff merely asserts that Defendant's "plan and scheme were exclusionary in a defined market"

3

and had the goal of restraining trade. (*Id.* ¶ 81.) Labor One alleges, further, that Staff Management has "sufficient market power in the providing of temporary workers to restrain competition from other providers," including Plaintiff, and that as a "result of Staff Management's anticompetitive act," Plaintiff has been damaged by a loss of "current and future contractual relationships." (*Id.* ¶¶ 83, 84.) Plaintiff contends its injury is "of the type the antitrust laws are intended to prohibit . . . ." (*Id.* ¶ 85.)

Plaintiff cites both sections 1 and 2 of the Sherman Act. (*Id.* ¶ 79.) Respectfully, the court disagrees that Plaintiff has alleged a violation of either section. Section 1 of the Sherman Act prohibits a contract, combination, or conspiracy in restraint of trade or commerce. 15 U.S.C. § 1. To allege a violation of this section, a plaintiff must plead enough evidentiary facts to show a (1) "contract, combination, or conspiracy"; (2) by which those involved intend to unreasonably harm or restrain trade or commerce; and (3) which actually injures, harms, or restrains trade or commerce. 15 U.S.C. § 1; *Denny's Marina, Inc. v. Renfro Productions, Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993). Any claim under Sherman Section 1 fails because Plaintiff has not identified any entity with whom Defendant Staff Management has purportedly combined or conspired in an effort to restrain trade. The only agreement identified in the complaint is the one between Labor One and Staff Management, which Plaintiff alleges has been breached. Staff Management presumably has an agreement to provide labor services to Aramark, but Plaintiff has not named Aramark as a Defendant in Count VI, and has presented no plausible basis for a conclusion that Aramark would have entered into that agreement for the purpose of squeezing one of Staff Management's suppliers out of the market.

Instead, Plaintiff appears to believe that Staff Management's alleged wrongdoing was aimed at enhancing its own individual market power; thus, Labor One asserts, Staff Management's "plan and scheme" (notably undefined in the complaint) were "in furtherance of attempting to restrain trade and/or create a monopoly" for Staff Management. (Complaint ¶ 81.) Those allegations appear to be aimed at Section 2 of the Sherman Act. Under that section,

4

"[e]very person who shall monopolize, or attempt to monopolize" is subject to antitrust liability. 15 U.S.C. § 2; *see also* 15 U.S.C. § 15 (providing individual right of action). Though this language is broad, case law confirms that possessing or attempting to possess monopoly power does not by itself violate Section 2. *See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 447 (2009) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71 (1966).). Instead, liability for monopolization or the attempt to monopolize requires "anticompetitive conduct." *Mercatus Grp., LLC v. Lake Forest Hosp.,* 641 F.3d 834, 854 (7th Cir. 2011); *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000); *American Acad. Suppliers, Inc. v. Beckley-Cardy, Inc*., 922 F.2d 1317, 1320 (7th Cir. 1991) ("The offense of monopolization is the acquisition of monopoly by improper methods or, more commonly . . . the abuse of monopoly"); *State of Ill. ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1481 (7th Cir. 1991) ("Section 2 forbids not the intentional pursuit of monopoly power but the employment of unjustifiable means to gain that power.").

As Judge St. Eve recently explained, there are a variety of practices that may be unlawful attempts to monopolize. But "[n]ot usually counted among the traditional anticompetitive practices is a refusal to deal. Under well-rooted antitrust principles, firms generally have the right to determine with whom they will do business." *Viamedia, Inc. v. Comcast Corp.*, No. 16 C 5486, 2018 WL 3921741, *13 (N.D. Ill. Aug. 16, 2018) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)), *prob. juris noted*. It is not clear from Plaintiff Labor One's allegations that Labor One is a direct competitor of Staff Management; to the contrary, it appears that Staff Management does not furnish laborers directly, but acts only as a broker, contracting for such services on behalf of Aramark and other clients. Assuming, though, as Plaintiff does, that the parties are in fact competitors, nothing about the antitrust laws requires Staff Management to "deal with a rival," *Id.* (citing *Verizon Comms., Inc. v. Law Offices of Curtis V. Trinko, LLP,* 540 U.S. 398, 409–10 (2004)). Labor One's allegation that Staff Management has terminated the parties' agreement does not on its face constitute an attempt to monopolize.

5

Moreover, to state a claim, Plaintiff must also allege that Defendant's conduct has caused "antitrust injury"; antitrust lawsuits are to be brought to enforce rights of "those persons for whose benefit the laws were enacted"—that is, consumers. *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 317 (7th Cir. 2012); *Ehredt Underground, Inc. v. Commonwealth Edison Co.*, 90 F.3d 238, 240 (7th Cir. 1996) ("[W]e stress that antitrust is designed to protect consumers from producers, not to protect producers from each other or to ensure that one firm gets more of the business.") Conduct that excludes competitors from the market place is of concern "only if it impairs the health of the competitive process itself." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 394 (7th Cir. 1984). Thus, to challenge its exclusion from the marketplace as an antitrust violation, a plaintiff must allege that the likely effect of the challenged exclusion will be to raise prices above "the competitive level, or otherwise injure competition." *Id.* Labor One makes no such allegation. Plaintiff has not alleged that Staff Management's conduct harms competition; instead, the complaint notes only Plaintiff's own exclusion as a competitor. Plaintiff has not made any mention that Staff Management has raised, has planned to raise, or even has the ability to raise, the prices it charges its clients as a result of terminating its agreement with Labor One.

Plaintiff's antitrust allegations do not meet the pleading standards imposed by *Twombly*. Count VI is dismissed.

## II. Civil Rights Claim

The remaining federal law claim appears in Count X. Plaintiff alleges that both Defendants were "aware that Labor One's temporary workers to be supplied [to Aramark] . . . were African-American laborers from the inner-city of Chicago." (Complaint ¶ 14.) Labor One notes that after learning that Labor One "only hires African-American workers," Staff Management asked that Plaintiff "not continue to use those workers" but also that Plaintiff provide background information concerning its workers. (*Id.* ¶¶ 94, 95.) Plaintiff concludes this conduct impedes Labor One's own right "to make and enforce contracts based on racial discrimination," in violation of 42 U.S.C. § 1981. (*Id.* ¶ 96.) Labor One alleges, further, that Staff Managements "acts or omissions were

6

motivated, at least in part, by the fact that Labor One has an exclusive workforce of minority-based temporary workers." (*Id.* ¶ 97.)

These allegations are troubling, but not for the reason Plaintiff suggests. Plaintiff's assertion that it "only hired African-American workers" reads as an admission that Plaintiff itself is engaged in race discrimination. *Cf. Mendez v. Reinforcing Iron Workers Union Local 416*, No. 2:09-CV-02332-LRH, 2011 WL 6400284, at *3 (D. Nev. Dec. 20, 2011) ("A union or hiring hall would certainly violate § 1981's prohibition on racial discrimination in the making and enforcement of contracts by limiting membership or benefits on account of race") Whatever the merits of Plaintiff's own hiring practices may be, however, the court concludes the allegations of this complaint are not sufficient to move Labor One's Civil Rights Act claim from "conceivable to plausible." *Iqbal*, 556 U.S. at 680. Labor One has not so much as identified the "acts or omissions" it claims are improperly motivated. It has not explained how Staff Management's request for background information impeded Labor One's own right to enter into employment agreements with its workers. Labor One offers no basis for any conclusion that the billing dispute that precipitated Staff Management's alleged contract breach was in fact racially motivated. Unsupported by factual allegations, the court is not required to accept such a conclusion as true for purposes of this motion. *Id.* at 679.

The court concludes Labor One has not stated a claim under 42 U.S.C. § 1981.

## **CONCLUSION**

Defendant's motion to dismiss [32] is granted in part and stricken in part without prejudice. When the court has dismissed all federal claims before trial, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)). Plaintiff has leave to file an amended complaint within 21 days, but only if it can meet pleading standards for a federal claim, or establish that the court has diversity jurisdiction. Should no amended complaint be filed, the court will dismiss state

claims without prejudice to re-filing in state court. *See* 28 U.S.C. § 1367(c).

ENTER:

Dated: August 28, 2018

REBECCA R. PALLMEYER
United States District Judge